All right, I do see more than one person at council table. Is one person going to argue the whole thing? Yes. You're gonna argue everything? That's correct. Okay, all right. So do both of you travel from Saipan to be here with us? We did, Your Honor. Well, you obviously had a flight that took off and landed and you're here in court, so I guess it was a good flight. Yes. But a long flight. Okay. It can be a long flight. All right. Thank you. Good morning. You can proceed. Good morning. Thank you, Your Honor. My name is Bruce Perline. I represent the defendant appellant, Ms. Tydingco. I would like to reserve five minutes for rebuttal, if I could. We are before this court for the third time in this same case. So it's either the charm for the government or for you? That's right. This is the tiebreaker. Well, two and oh. So this is it. And her husband's out of it now. He is. He got out after the first case? After the first case. Yeah. Okay. The first indictment was 2016. It's this passage of time that gives rise to the main issues in this appeal. And in fact, the two CBP officers that are the crux of this case. Well, there's a few issues that you concede are they were decided previously. Yes. They're law of the case. So we're not going to revisit those. I think Nazemian, we admit that, look, that was, I think this panel is bound by that. But I think as far as Nazemian applies, but I think the analysis of the factors under Nazemian are still, you can still do that. And we'd also like to make the record for what we think is an appropriate en banc appeal and possibly resolving this issue in the Supreme Court. So we do have some arguments on Nazemian. The jury instruction argument is pretty much, Tydenko one and Tydenko two, I think, took care of that. Um, so the sufficiency of the evidence also seemed foreclosed by the prior appeals. Um, I would disagree with that, and I will touch on that, Your Honor. So if you would like me to, um, on the sufficiency of the evidence, um, the government, uh, claims that, look, this is, um, the problems with the previous, with Agun and Munya, their evidence that came in on the third, this third trial, that was erroneous. Agun and, Agun should have never been able to state that, hey, uh, this, this APIS document states that Exxon had a return flight from Saipan. And she should have certainly never been able to state that. And yes, this APIS form is true and correct. She had absolutely no knowledge of anything. Well, let me ask you about that. Yes. And help me with this. There's your client has a written statement, correct? That's correct. And isn't that written statement indicate that she knew of the I-94 passport? I saw the I-94, uh, form in, we've always referred the minor as Exxon, Xinyi. But that's it. That's all that statement says. There's no context whatsoever in that. Doesn't the form say what the departure date is? It's stamped. Yes. Right. So she's, she saw the, she says, I saw the form. Correct. And it's a matter for argument to the jury whether or not she read that portion of the form or didn't read that portion of the form. But there's no doubt that the form has the departure date on it, doesn't it? That's correct. So wasn't, now I'm looking at both your translator arguments and the other arguments. Put all those aside for a second. Yes. If it wasn't, wasn't a finder of fact entitled to believe that having seen the form that had the departure date on it, she knew of the departure date, but nonetheless kept, kept the, the young woman there after the departure date. I think they're entitled to, to, to do that. The problem is there's no context as to when did she see that. But that context, you're making legal arguments to us. One is that some of these other statements are not admissible or that the evidence is not sufficient. And I'm trying to look at the evidence in the light most favorable to the government. Right. And it seems to me the one piece of evidence you have a hard time getting around, other than arguing facts, is that she saw this document. It had the departure date on it. And so the whole key to this case is did she know that there was a departure date and nonetheless harbor the young woman for a longer period. And that strikes me as the smoking gun. So how do, how do I deal with that? So I think, I think the way we do with that is, deal with that is the error of the testimony of Agun and the error, erroneous testimony of Munoz. So when you, when you. But why aren't those harmless if in fact she knew of the date? Correct. Because that testimony, assuming she knew of the date, which in her case she did, that testimony should never have come in. So we know that when there's testimony, when there's evidence that's can't just ignore that erroneous evidence. I mean, that was powerful evidence from agent or officer Agun that said XN had a return ticket. And why did they want that? Because the government wanted her to say that. That's the only reason she was called. Okay, but you have to, but I guess what, okay, if we was wrongfully admitted, even though I think I could have gotten it in as a first-year prosecutor, under showing that people forget, you show them the report, does this refresh your recollection? If it doesn't refresh your recollection, how do you make these reports? Do you make them at the time of the incident? Was it true and correct at the time? I don't know why they didn't do it. There were other ways to get it in. But that being said, if that's an error to win, it seems to me you have to show that that error is still prejudicial, even though it was corroborated by Officer Munna's testimony. So you've got to get Munna thrown out. And even, and that in Ms. Tedingo's signed statement that she knew of the I-94, and it's in there. So you got it. In order to win, it seems like you've got all of that thrown out. Yeah. Well, and let me add before you before you answer that that that that the officer was also subject to extensive cross-examination, which she acknowledged that she didn't have a memory of any of this. So, I mean, to me that kind of adds to the harmlessness of the error. That she didn't, that she admitted she had absolutely no memory. That she was cross-examined on it. Yes, absolutely. You're talking about Officer Agun. That's right. And who said, I have no knowledge or no memory of the Tedinkos whatsoever, but yet she came in and testified that yet this APIS document, which is filled in by the airlines. But what Judge Thomas is saying is, let's assume it's an error, but if she was cross-examined and she said she has no knowledge of it, it didn't really make, you know, it didn't make much of a difference. Why would anyone give that any weight? Because no one would believe her. Right, no one would, no one would believe her. Why would anyone give that testimony any weight when she gets on the stand and acknowledges, you know what, actually, I don't, I didn't remember any of that. Well, because, thank you. No, I mean, I think her testimony about the APIS form is, and the government says, well, she printed it out. She printed out this APIS, and they try and argue that that's, well, that's percipient, that's real-time, that's where her memory comes from. But it's not. It's the APIS form that she testifies that this is an official government document, and in that document, it states that Xinyi has a return ticket leaving Saipan, right? And why is that important? Because that goes to Ms. Taitenko's intent, that she knows that Xinyi needs a return ticket. She's got to get out of there. So they want that to show Ms. Taitenko's intent that she is going, she intends to violate immigration law. That's the important thing there. She might say, I have no recollection. That's absolutely true, but when it comes to the APIS form, she says, oh yeah, I saw it, and that's what it said. And then she said, this APIS form is absolutely true, accurate, and correct. That's a powerful statement coming from a CBP officer, yet she has absolutely, excuse me, no foundation to say that. Can we go back to the 594 form? Because I want to make sure we have the record correct. That's what was stapled into Xinyi's passport. Right, but that's what the I-94 form says has the date on it by which XN is supposed to return to China, right? Yes. And we talked about that before. My question is, doesn't your client say not only that she saw the form, but she saw the date on it? She did see the date on it, but we still don't know, does she understand what that means? Okay, I want to make sure, I just want to make sure so that we're not fighting about what the record says. She did say, I saw the form and saw the date on it. Yes. By which the young lady was supposed to return to China. Yeah, and that statement. Her argument is, I didn't understand that. Correct. Okay, I thought you told me before, it wasn't clear that, well, she saw the form that she understood it, but she did understand there was a date on there that said that was the date on which the young lady was supposed to return to China. She doesn't really testify at trial, right? She just, it's her statement. Her statement. Do you want to save the balance of your time for a rebuttal? Yes. Okay. Thank you very much. Let's hear from the government. Thank you. Good morning. Good morning. May it please the court. Ashley Cost, on behalf of the United States. Did you try this case? I did not, Your Honor. Well, it sort of seems like the gang that can't shoot right here. I mean, in terms of, it doesn't, did, what was your sentence, ultimately? Three months. Yeah, so, and we're not talking about, we're going after Al Capone or the head of a, but, okay, so we're on the third trial, and maybe you start, you didn't make the mistakes of the person in the second trial, but now we have more. So, why can't we just get this right here? Give us a break. Your Honor, I can't, I can't answer that. So, all right, is it your position that Officers Munoz's testimony about the translated interview with Tadingo is foreclosed by our decision in our, the prior appeal, Tadingo? Correct, Your Honor. In Tadingo, to your, the Ninth Circuit's prior decision, they determined that the dispositive factor was Ms. Tadingo's fluency in English. Did they find that she could, she could speak English? Yeah, they said that that was the, that was determined to be the dispositive factor, was her fluency in English, by her speaking to Officer Munoz in English and in Chinese, by her interview with Task Force Officer DeBrawl. She spoke in English when he informed her that they were going to get a translator, even though she could, she insisted she spoke English, she understood English, but they still got a translator because it wasn't her first language. And then when they, and then Officer DeBrawl testified in court that when they asked questions to Ms. Tadingo, that she would answer in English, answer back in English, they still would use the translator, who would then translate, and, and then they recorded it into another, or onto the personal statement, which at a later date, she signed. That personal statement, they would go through the statement line by line, having it translated. They put a trick question in there, too? They, yes, they put intentionally false information in there to ensure that the person who's signing the form is going through it accurate, accurately, and they agree with what's being said. In this specific instance, the HSI investigators put in a mistake on her birth date, to ensure accuracy and understanding. And, and previously the, she corrected it, correct. And previously the, this is similar to the On Fang case, which the Ninth Circuit has previously upheld with the language lines translators and HSI's use of going through the personal statements, line by line, ensuring correction, putting in errors. So it is similar to the On Fang case, but more than that, as, as already stated, in Tidinko, too, that it's the dispositive factor of her fluency in English. So what about, it may not make a difference on the record in this case, but what about the testimony, and I forget which of the officers it was, about, it was my impression that they were, you know, purported to be related, or something like that. Isn't that, I mean, why should that come in? Your Honor, that was Officer Munoz. Yes. And he said it was his understanding, and. But he couldn't remember on what he, on what he based the understanding. Well, I would assert that his understanding was his recollection of the events at the time. So he couldn't positively identify Ms. Tidinko in court, but his understanding of the event, he, he could, that it was an adult female and a minor that was coming through for secondary inspection, that she spoke English and, and Chinese, and his understanding of their relationship, and that's where it was specific to the relationship, was that it was one of an aunt and a niece, that there was a familial relationship. Can I ask a question you may not be able to answer? Because. Yes. You're not in charge? Why are we still here? This is the third trial of someone who got a 90-day sentence. Are we here about something else that we don't know about? I don't think so, Your Honor, but again, I, I'm, I'm not the one who tried, who tried the cases, but I, I think it is important, especially with our district and the conditional parole program that happens, it is important that people follow the rules of, of that program in order for the program to continue, because tourism helps our district, right? So, she's an example? I, I wouldn't necessarily say that she's an example, but it's a situation that we knew that she obviously violated the law, and we move forward with the case. So, if the district court erred in admitting Officers Aguan's testimony, is it harmless given the testimony was corroborated by Officer Munoz's testimony? Yes, I would agree that it's corroborated by Officer Munoz's testimony and by the report from the tech system, which was Government Exhibit 1. And then, as discussed earlier, and as decided in Tydenko 1 and 2, the fact that Ms. Tydenko's personal statement admits that she had Ex-In's passport, that she saw the white I-94 stapled in the passport, which has the date just stamped right in the middle of it, that she knew that Ex-In was supposed to leave by November 4th, 2013, and that she intended to keep her past that date. Let's, let's talk about the return ticket for a moment. I'm, I'm don't, I'm not sure I see any problem with the officers saying, our understanding of policy at the time was that in order to enter this way, one had to have a return ticket. But, how, what about their testimony that the defendant knew about the return ticket? How is that based, what is that based on? Well, so, the I-94 is separate than the return ticket. Right, right, yeah, I know. And so, we know, we know from the I-94 that the defendant says, I read this document, which had the return date. But, in order to bolster the government's case, the government also wanted to put in evidence that there was a return ticket. That's fine with me, because that's the practice of the admitting officers, to make sure there's a return ticket to the defendant in this case. I would say you would tie it to the defendant by, also in her personal statement, she admits that she, she was the person who accompanied XN through customs. Well, but see, you can do it through that, but here you've got an officer saying, in effect, she must have known of the return ticket because it's on forms that she may or may not have seen. So, how do, isn't that testimony, I'm not sure it's harm, I'm not sure it's reversible error, but how does that come in? So, again, I would assert that what officers, Munia and Officer Oggins were, testimony was about the primary and secondary inspections. In order to get that I-94 stamp, or I-94 stapled into the back of the passport, in order for that to happen, these other steps have to happen, which include going through the tech forms, confirming all the information, and the most important part of the conditional parole program is, in order to be let in to the CNMI, you have to have a return ticket. If they don't have a return ticket, then they won't be let in, and the airline has to immediately repatriate, repatriate them out. So, I would say that because that is part of the process of how to get the I-94 form, and because Ms. Tydenko accompanied Ex-In through the process, that that, that would be how we would know that she knew about the return ticket, because that's what most of the questions focus on, or the, one of the primary things the questions focus on is whether there's a return ticket, otherwise they're not coming in. Now, help me on this. The officers don't say she knew of the return ticket, do they? They don't. There has to be a return ticket. It's on forms. It's our practice. I would have checked to have seen whether there was one, but they never say, and she therefore knew of it, do they? No, they do not, Your Honor. That's the argument you make from their testimony. Yeah. So, if the district court erred in admitting that Tydenko's translated statement, is there sufficient evidence? So, I would say, again, if it's the, specifically the translated statement that doesn't get in, it is a much tougher case. You know, we would still have to Ms. Tydenko knew of the departure date and intended to keep XN, but again, that specific... But if the statement doesn't come in, then you don't have her saying she looked at the I-994, right? Correct. You would just have the statements of, specifically, Officer Munia, that a woman accompanied XN, the minor, through the process when he was a secondary inspection, but he didn't specifically identify Ms. Tydenko as that person. So, what errors have to be harmless in order for you to still prevail? If we find any, or let's just say the other way, if we find errors not to be harmless, what would make you lose here? Yes. So, I would say, as you touched on it, not admitting in her personal statement would make this a much more difficult case, but like I said before, the translated statement took place over... The original interview took place on... I know you're not conceding that it doesn't come out, but if it does come out, maybe you lose, or let's say if Officer Angwin, if that goes and her statement goes, do you lose? No. So, I would say, specifically... Getting very thin. Yeah. So, I would say, specifically, with Officer Ogden and Officer Munia, either one of their testimonies, the error is harmless because we have the signed statement from Ms. Tydenko admitting that she... No, I wasn't... I know you have to argue they're harmless, but I'm just saying, hypothetically, if we don't find they're harmless, is there anything left? Is there anything left? I would say without the signed statement, like I said, it'd be a... And your friend's argument, so I want you to respond to it, is, yeah, the signed statement ain't good for his client, but it got buttressed by a bunch of evidence that he doesn't think should have come in. So, let's assume for a moment, as Judge Callahan posits, that we might find that the other evidence shouldn't have come in. Forget our previous decisions and everything else. Is it nonetheless harmless, in your view, because of the signed statement, or does his point have some substance? My argument would be that it's nonetheless harmless because of the signed statement, as decided in Tydenko, too. The fact that there's a signed statement saying that she saw the I-94, she knows the date that Exxon's supposed to leave, and she keeps their past the date, that evidence... That truly kills sufficiency, the evidence argument. I'm just trying to figure out whether or not it also kills their argument that the introduction of other corroborating evidence was not harmless, if erroneous. I would say, specifically, touching on Officer Ogden and Officer Munoz's testimony, it is harmless because of the corroborating evidence, which includes the Texas M Report Exhibit 1, Exhibit 2, and then, specifically, her signed statement. We don't appear to have any additional questions. Okay. Thank you, Your Honors. Thank you for your argument. Thank you. So, again, assuming Munoz's testimony and Ogden's testimony... Ogden's testimony is the worst, in my opinion. Again, she comes in and says, without any memory, without any personal knowledge of the Tydenkos or the APIS statement, she comes in and says, Exxon has a return ticket. And she says, this APIS form that says Exxon has a return ticket is true, accurate, and correct. That's error. That's presumed erroneous. Evidence that admitted erroneous is presumed prejudicial. You start out with the notion that we then have to figure out whether it's harmless. Yes. And I do think the testimony that it is our policy to require return tickets is okay, and our policy that I normally check to see if there is one is okay. And then we have her statement that I knew she was supposed to return. When you put those two things together, why isn't that enough to get you past any error? Well, I don't think her statement does say, I knew she was supposed to return. It simply says at one point... I saw the date of return. Yeah. I saw... Well, I saw the date in the passport and the date of parole. She doesn't say she... That's an issue. Nobody asked her, it goes, do you know what parole means? Do you know what this date... It's just a date in a form. It doesn't say you have to leave by. There's no indication. It's just a stamp. So there's no indication that she personally knows this, that she has to leave by this time. In fact, they enrolled her in public school. They signed media release statements. They signed all these things. They give a map to their house. They're not trying to hide her, right? I mean, so the issue is, does she know what that means? Immigration laws are incredibly complex, especially CW1 immigration laws that are particular to the CNMI. Can you help me with the record? There's some evidence that your client was compensated for doing this. Yes. But I'm not clear from the record, is there evidence that she was compensated on other occasions for similarly hosting or arranging for students to come in? So it was just on this occasion? Yes. Yes. And so going back to assuming that evidence was erroneously admitted, the government has to come back and fight that with highly persuasive evidence. The statement, her statement, isn't highly persuasive. They can't just come in and say, Tydenko 2 said sufficiency of the evidence. Harmless error is different from sufficiency of the evidence. Does Tydenko 2 say anything about the admissibility of any of these officers? I'm sorry, Your Honor. Do our prior decisions say anything about the admissibility of either of the officers' testimony? Yes, I think. Okay, so yeah. So I'm trying to figure, if you put Tydenko 2 together with this, her knowledge of the I-94, why isn't it harmless error? I understand you want to preserve your objections to Tydenko 2. I'm just trying to figure out. Yeah, as far as Officer Munia and Officer, I'm not sure Tydenko 1 or 2, I know Tydenko 1 doesn't mention Officer Munia. Right, that's why I asked about 2. He didn't testify. I don't think they talked about Officer Ogden's testimony. Right, but we have Officer Munia's testimony that is true. And Officer Munia's testimony, it's not really that big a deal. It's that familial relationship, right, where he comes in and he has absolutely no recollection. He admits in one line of questioning, the prosecution goes, do you remember your conversation between the lady and the minor? Are they related? Are they related? Yeah, are they aunt and niece? No, but in Saipan, and you'll see that in the transcript, in Saipan, everybody calls Auntie Uncle. It's, I have a thousand nephews, because everybody, it's just the way it is there. Sort of respectful, yes, of people that are older. Yes. All right, unless there are additional questions, I would say wrap it up in 30 seconds. Thank you. My final point, I think, is just running, circling back to Nazemian. The judge, the court has to do the analysis. There's no broad discretion there. The court does not have broad discretion to do that analysis. They must do the analysis. There is absolutely no information available for the court to conduct analysis under the Nazemian factors. There's no way she could be a conduit here in this case. If there's no further questions, thank you. Thank you both for your argument. This matter will stand submitted.
judges: CALLAHAN, HURWITZ, THOMAS